

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-19-2008

# Evanson v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 07-2509

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Evanson v. Atty Gen USA" (2008). *2008 Decisions.* Paper 6.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/6

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2509
_____

WISTER EVANSON
                                        Petitioner


v.


ATTORNEY GENERAL OF THE UNITED STATES
_____

Petition for Review of an Order
of the Board of Immigration Appeals
(No. A 37-592-428)
_____
Argued September 11, 2008

Before:  SLOVITER, FUENTES, and ALDISERT,
<u>Circuit Judges</u>


(Filed: December 19, 2008  )

Martin A. Kascavage, Esq. (Argued)
Schoener & Kascavage
400 Market Street, Suite 420
Philadelphia, PA 19106-0000

Attorney for Petitioner

Richard M. Evans, Esq.
Michelle G. Latour, Esq.
Virginia M. Lum, Esq.
Kohsei Ugumori, Esq.
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044-0000

Attorneys for Respondent

---

OPINION OF THE COURT

---

FUENTES, Circuit Judge:

Wister Evanson, a native and citizen of Trinidad and Tobago, pled guilty to possession of marijuana with intent to deliver and criminal conspiracy in violation of Pennsylvania law. After the state judge sentenced him to probation and community service, the Department of Homeland Security ("DHS") commenced removal proceedings. The Immigration Judge ("IJ") found that Evanson's offense did not constitute an aggravated felony and granted cancellation of removal. However, based on information found only in a sentencing document, the Board of Immigration Appeals ("BIA") found that the offense constituted an aggravated felony and ordered removal. For the reasons that follow, we conclude that the BIA erred in failing to apply the modified categorical approach set forth in Taylor v. United States, 495 U.S. 575 (1990), and Shepard v. United States, 544 U.S. 13 (2005), and therefore erred when it considered Evanson's sentencing document to determine whether he had been convicted of an aggravated felony. We will thus grant the Petition and remand for further

2

proceedings.

I.

Wister Evanson, 42, was admitted to the United States as a permanent resident in December of 1981. In March 2005, Evanson was a passenger in a car owned and driven by Stephanie Ofori, his girlfriend, when they were hit by a drunk driver.[1] Police responding to the accident found marijuana in the car and arrested Evanson. According to the Affidavit of Probable Cause attached to the Police Criminal Complaint, the marijuana was in a large black trash bag found on the back seat of the car and was divided into one large zip-lock bag, two medium-sized zip-lock bags, and one-hundred small zip-lock bags. The Criminal Complaint also alleged that a marijuana cigarette was found in Evanson's pocket.

Evanson pled guilty in Pennsylvania state court to a criminal information charging him with committing a controlled substance offense in violation of 35 Pa. Stat. Ann. § 780-113(a)(30), and criminal conspiracy to commit that offense in violation of 18 Pa. Stat. Ann. § 903. 35 Pa. Stat. Ann. § 780-113 states:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> . . . .
>
> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

Mirroring the language of the statute, the information alleged that Evanson "did manufacture, deliver, or possess with an intent to manufacture or deliver a controlled substance(s), to wit: MARIJUANA." (Administrative Record (A.R.) 238.) These counts of the information did not contain any additional detail

---

[1] Ofori is the mother of Evanson's youngest child. At the time, Evanson was living with Starlette Sumpter, the mother of his other children.

about the offenses.

Evanson was sentenced to thirty-six months' probation and community service. The judgment of sentence stated that Evanson was charged with "intent to deliver or manufacture marijuana .4841 lbs drug schedule I." (A.R. 252.)

Following his sentencing, DHS commenced removal proceedings against Evanson. Specifically, DHS charged Evanson with removability under 8 U.S.C. § 1227(a)(2)(A)(iii), which provides that "[an] alien who is convicted of an aggravated felony at any time after admission is deportable," and under 8 U.S.C. § 1227(a)(2)(B)(i), which provides that an

> alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

Evanson denied the charges of removability.

At Evanson's first hearing, the IJ noted that he was required to consider "what [Evanson was] found guilty of or pleaded guilty to" rather than the facts of the underlying offense. (A.R. 70.) The IJ then held that the Criminal Complaint was not "sufficient evidence" of the elements to which Evanson pled guilty because it had been superceded by an information. (A.R. 69, 70-71.) The hearing was adjourned to give the Government an opportunity to supplement the record with evidence that would establish the elements of the offense to which Evanson pled guilty, namely a copy of the information and a transcript of Evanson's plea colloquy.

At a hearing in December 2006, the IJ reviewed the criminal information—no transcript of the plea colloquy was presented despite the IJ's suggestion—and found that it did not establish that Evanson's offense involved payment. The IJ therefore found that Evanson's offense "could qualify as a Federal misdemeanor." (A.R. at 82.)

Accordingly, the IJ found that the Government had not established that Evanson had been convicted of an aggravated

4

felony and dismissed that count of the removability proceeding. The IJ concluded that Evanson was nonetheless removable pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) because he had been convicted of violations of laws or regulations related to a controlled substance.[2]

Evanson then presented an application for cancellation of removal under 8 U.S.C. § 1229b(a), which provides relief from removal for certain long-time permanent residents. At a hearing on the application, Evanson testified that the night before his arrest a friend placed a bag of marijuana in the trunk of Ofori's car and forgot to take it with him when he got out of the car. Evanson denied that he knew that the marijuana was left in the car or the volume of marijuana. The next day, Ofori was driving Evanson home when they were hit by a drunk driver. A police officer witnessed the accident and asked Ofori to follow him while he pursued the driver. Once the driver was stopped, another officer indicated that he smelled marijuana and asked to search Ofori's car. The officer found the bag of marijuana and Evanson was arrested. Evanson admitted casual marijuana use, but denied that he ever sold marijuana or used marijuana in front of his children.

Evanson also testified about his lengthy residence in the United States. In addition to serving as a reservist in the United States armed forces, Evanson has been gainfully employed in the health care field for at least ten years. Also, he has completed a number of courses towards an undergraduate degree in computer science from St. Joseph's University. Evanson testified that he has three children, ages 15, 5, and 2, all United States citizens. At the time he was taken into immigration custody, Evanson lived with the older two children and their mother and saw the youngest child on a regular basis. Evanson supported all three children. Following Evanson's testimony, the IJ credited Evanson's account of the incident and granted his request for cancellation of removal based primarily on his close relationship with his young United States citizen children.

---

[2] An alien who has been convicted of an aggravated felony is not eligible for most discretionary relief. Conversely, an alien who was convicted of violating a law related to a controlled substance is removable, but may seek discretionary relief including cancellation of removal under 8 U.S.C. § 1229b(a).

The Government appealed to the BIA. In its decision, the BIA found that Evanson had been convicted of an offense "involving possession with intent to deliver or manufacture a controlled substance, marihuana, in the amount of .4841 pounds." (App. 6.) The BIA did not discuss how it determined that Evanson's offense involved .4841 pounds of marijuana. "Based on the large quantity of marijuana involved," the Board concluded that Evanson's conviction was punishable as a felony under the federal Controlled Substances Act, 21 U.S.C. § 841(a), and thus was an aggravated felony. (App. 6.) As a result, the BIA found that Evanson was not eligible for cancellation of removal and ordered him removed. Evanson petitions for review.

II.

We have jurisdiction to determine <u>de novo</u> whether Evanson's conviction constituted an aggravated felony, but not to review the BIA's exercise of its discretion in granting or denying cancellation of removal. 8 U.S.C. § 1252(a)(2)(C), (D).[3]

Evanson contends that his conviction under Pennsylvania state law did not constitute an aggravated felony. The Government argues that Evanson's controlled substance offense was an aggravated felony, and that he is therefore ineligible for discretionary relief from an order of removal. To determine if Evanson has been convicted of an aggravated felony, we begin with its definition under the Immigration and Nationality Act ("INA"). The definition of "aggravated felony" includes, in relevant part, "illicit trafficking in a controlled substance (as defined in 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). In turn, section 924(c) defines "drug trafficking crime" as "any felony punishable under the Controlled Substances Act." Thus, a state drug conviction constitutes an aggravated felony if (a) it would be punishable as a felony under the federal Controlled Substances Act, or (b) it is a felony under state law and includes an illicit trafficking element. Accordingly, we apply two independent tests for determining whether a state drug offense constitutes an aggravated felony:

_____

[3] The Government has filed a motion to dismiss based on its argument that Evanson was convicted of an aggravated felony. However, we will deny that motion for the reasons that follow.

6

the "illicit trafficking element" route and the "hypothetical federal felony" route. Garcia v. Att'y Gen., 462 F.3d 287, 291 (3d Cir. 2006) (citing Gerbier v. Holmes, 280 F.3d 297, 313 (3d Cir. 2002)).

## A. Hypothetical Federal Felony

Under the hypothetical federal felony route, we compare the offense of conviction to the federal Controlled Substances Act to determine if it is analogous to an offense under that Act. The federal Controlled Substances Act makes it a felony to knowingly or intentionally "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense," any amount of marijuana, except that "distributing a small amount of marihuana for no remuneration" is a misdemeanor. 21 U.S.C. § 841(a), (b)(1)(D), (b)(4). A state marijuana conviction is therefore only equivalent to a federal drug felony if the offense involved payment or more than a small amount of marijuana. See Steele v. Blackman, 236 F.3d 130, 137 (3d Cir. 2001) ("Since distribution of marijuana without remuneration is not inherently a felony, it seems to us that the only alternative to so regarding it consistent with the rule of lenity would be to treat any § 844 offense in this context as a misdemeanor."); Wilson v. Ashcroft, 350 F.3d 377, 381 (3d Cir. 2003).

In Jeune v. Att'y Gen., we considered whether a conviction under 35 Pa. Stat. Ann. § 780-113(a)(30) was analogous to a violation of 21 U.S.C. § 841(b)(1)(D). 476 F.3d 199, 204-05 (3d Cir. 2007). We found that distributing a small amount of marijuana for no remuneration could be prosecuted under the Pennsylvania statute, and thus that we could not determine that it was equivalent to a federal drug felony without more information about the conviction. Id.

We recognize that other courts have disagreed with our view of 21 U.S.C. § 841. See, e.g., Julce v. Mukasey, 530 F.3d 30, 35 (1st Cir. 2008) (holding that a petitioner bears the burden of proving that a state marijuana conviction did not involve remuneration to escape the conclusion that the conviction amounted to a federal felony); In re Aruna, 24 I. & N. Dec. 452, 458 n.4 (B.I.A. 2008) (declining to apply Steele to cases arising outside of the Third Circuit). However, the Government makes no argument that we should alter our conclusion that distribution of a small amount of marijuana without remuneration is not inherently a federal felony. Accordingly, we need not revisit this issue.

7

## B. Illicit Trafficking Element

Under the illicit trafficking element test, a state felony drug conviction constitutes an aggravated felony if it contains a trafficking element. See, e.g., Gerbier, 280 F.3d at 305-06. "To contain a trafficking element, a state felony must involve 'the unlawful trading or dealing of a controlled substance.'" Jeune, 476 F.3d at 202 (quoting Gerbier, 280 F.3d at 305); see also Steele, 236 F.3d at 135 ("Essential to the concept of 'trading or dealing' is activity of a business or merchant nature, thus excluding simple possession or transfer without consideration." (internal quotation marks and citation omitted)).

In Garcia, we noted that the Pennsylvania statute "may encompass conduct that does not involve trading or dealing. In particular, it is not clear that every violation of the manufacturing provision involves trading or dealing." 462 F.3d at 293 n.9. In Jeune, we clarified that "more than the bare fact of conviction" under 35 Pa. Stat. Ann. § 780-113(a)(30) is needed to satisfy the illicit trafficking element test. 476 F.3d at 204 (noting that "[m]anufacturing marijuana for personal use would arguably not be an aggravated felony").

Accordingly, under either the hypothetical federal felony test or the illicit trafficking element test, a conviction under the Pennsylvania statute is not necessarily an aggravated felony. Thus, we must determine what records may be consulted to evaluate a conviction under the Pennsylvania statute.

## C. Categorical Approach

To determine whether an offense of conviction amounts to an aggravated felony, including by means of the hypothetical federal felony and illicit trafficking element tests, we presumptively apply a "formal categorical approach." Singh v. Ashcroft, 383 F.3d 144, 161 (3d Cir. 2004) (synthesizing our aggravated felony case law). A formal categorical approach prohibits us from any review of the factual basis for an underlying conviction. Id. at 147-48. Thus, to determine what records we may consult in evaluating Evanson's Pennsylvania conviction, we must determine whether the presumption in favor of the formal categorical approach applies, and if not, how far we may depart from it. We begin by considering the origin of the categorical approach.

The Supreme Court set forth the formal categorical approach in the context of the Armed Career Criminal Act

("ACCA"), 18 U.S.C. § 924(e)(1). <u>Taylor v. United States</u>, 495 U.S. 575 (1990). The ACCA requires an enhanced penalty for possession of a firearm when the defendant has "three previous convictions . . . for a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e). "Violent felony" is defined as an offense that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). Taylor had been convicted of violating a state burglary statute that had a broader definition than the Court found Congress intended to apply to the term "burglary" as used in the ACCA. <u>See</u> 495 U.S. at 578-79. Thus, in <u>Taylor</u>, the Court was confronted with deciding "whether the sentencing court in applying § 924(e) must look only to the statutory definitions of the prior offenses," the formal categorical approach, "or whether the court may consider other evidence concerning the defendant's prior crimes," the factual approach. <u>Id.</u> at 600. Noting the language of § 924(e), legislative history suggesting "a categorical approach to predicate offenses," and "the practical difficulties and potential unfairness of a factual approach," the Supreme Court concluded that a trial court should generally "look only to the fact of conviction and the statutory definition of the prior offense." <u>Id.</u> at 600-02.

However, the Supreme Court also held that it was appropriate "to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of [an ACCA predicate offense]." <u>Id.</u> at 602. We refer to this second step of the <u>Taylor</u> analysis as the modified categorical approach.[4] In particular, in <u>Taylor</u> the

_____

[4] Some confusion has resulted from inconsistent use of the phrase "modified categorical approach." <u>See</u> <u>Conteh v. Gonzales</u>, 461 F.3d 45, 54 (1st Cir. 2006) (describing different uses of the term). We use the term to mean looking beyond the statutory definition, but only for the purpose of determining the elements necessarily found by a jury, or admitted by a defendant in pleading guilty. <u>Nijhawan v. Att'y Gen.</u>, 523 F.3d 387, 393 (3d Cir. 2008) ("The modified categorical approach entails scrutiny of the nature of the conviction itself and those elements that the jury necessarily found through an examination of judicial record evidence. If the jury did not necessarily find that

Court held that we may consult the charging document and jury instructions in addition to the statutory definition to determine what elements formed the basis for a defendant's underlying conviction.  Id. at 602.

In Shepard v. United States, 544 U.S. 13, 19-20 (2005), the Court extended the modified categorical approach to cases resolved by guilty plea.  The Court reiterated that a court applying § 924(e) must avoid "evidentiary enquiries into the factual basis for the earlier conviction," instead focusing on whether a "plea had 'necessarily' rested on" the elements of an ACCA predicate offense.  Id. at 20-21 (quoting Taylor, 495 U.S. at 602).  Thus, the Court held that appropriate records to consider in evaluating a pleaded case are the "statutory definition, charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented"—the closest analogs to the materials approved in Taylor.  544 U.S. at 16, 20-23 (holding that "a police report submitted to a local court as grounds for issuing a complaint" was not an appropriate document to consider).

Like the ACCA, 8 U.S.C. § 1227(a)(2)(A)(iii)—the section of the INA that renders an aggravated felon removable—refers to "[a]ny alien who is convicted of an aggravated felony" (emphasis added) rather than to any alien who "has committed" an aggravated felony.  Cf. In re Velazquez-Herrera, 24 I. & N. Dec. 503, 513 (B.I.A. 2008) ("For nearly a century, the Federal circuit courts of appeals have held that where a ground of deportability is premised on the existence of a 'conviction' for a particular type of crime, the focus of the immigration authorities must be on the crime of which the alien was convicted, to the exclusion of any other criminal or morally reprehensible acts he may have committed.").  Accordingly,  we presumptively apply the "formal categorical approach" in evaluating whether predicate convictions fall within the definition of "aggravated felony."  Singh, 383 F.3d at 161; see also id. at 152 (noting that Taylor's

element, the 'conviction' will not fit within the enhanced category.").  In other words, we use "modified categorical approach" to refer to the second step of the Taylor analysis rather than to a broader review of the record of conviction to determine a petitioner's underlying conduct.

analysis applies in the aggravated felony context "because § 1101(a)(43) [the section enumerating aggravated felonies] is similar to 18 U.S.C. § 924(e) in that it too enumerates offenses, conviction of which places an alien in the category of 'aggravated felon'"); Gonzales v. Duenas-Alvarez, 549 U.S. 183 (2007) (applying the Taylor framework in aggravated felony context).

As in the ACCA context, our analysis is not always limited to the formal categorical approach. Confronted with a disjunctive statute of conviction, one in which there are alternative elements, we apply the modified categorical approach set forth in Taylor and Shepard to determine which of the alternative elements was the actual basis for the underlying conviction. Singh, 383 F.3d at 162-63; Nijhawan v. Att'y Gen., 523 F.3d 387, 393 (3d Cir. 2008) (noting that the modified categorical approach applies to cases involving "divisible" statutes of conviction).

We depart farther from the formal categorical approach only where the language of a particular subsection of § 1101(a)(43)—the aggravated felony enumerating statute— "invites inquiry into 'the underlying facts of the case.'" Nijhawan, 523 F.3d at 393 (evaluating underlying facts to determine whether fraud conviction constituted aggravated felony). In particular, a categorical approach does not apply to subsections that include "'in which' or other analogous qualifying language." Id. at 391. In these cases, our inquiry is not limited to "facts actually and necessarily found beyond a reasonable doubt by a jury or judge." Id. at 391-96 (citations and internal quotation marks omitted). Accordingly, we may "look[] to a wider array of records that possess a high indicia of reliability," including records not permitted by the modified categorical approach. Id. at 399.

In Garcia, we determined that 35 Pa. Stat. Ann. § 780-113(a)(30) is divisible because it describes "three distinct offenses: manufacture, delivery, and possession with intent to deliver or manufacture." 462 F.3d at 293 n.9. Thus, we held that the formal categorical approach does not limit our application of the illicit trafficking element test to this statute. Id. (noting that "it appears that the section may encompass conduct that does not involve trading or dealing"); see also

<u>Jeune</u>, 476 F.3d at 202.[5]  Accordingly, in <u>Garcia</u> we looked to the charging instrument to determine that Garcia pled guilty to selling marijuana to an undercover police officer.  462 F.3d at 293.  Thus, we found that Garcia had been convicted of an illicit trafficking offense and was an aggravated felon.  <u>Id.</u>

In <u>Garcia</u>, we concluded that we should not go beyond the modified categorical approach, as we did in <u>Nijhawan</u>, because we were not directed to do so by the aggravated felony enumerating statute.  See <u>Garcia</u>, 462 F.3d at 292; <u>Singh</u>, 383 F.3d at 161 ("[T]he hypothetical federal felony trilogy (<u>Steele</u>, <u>Gerber</u>, and <u>Wilson</u>) asks only whether the elements of a federal criminal statute can be satisfied by reference to the actual statute of conviction; this presents no invitation to depart from <u>Taylor</u>'s formal categorical approach and examine the underlying facts.").  Thus, we may only look beyond the statutory definition to the extent permitted by the modified categorical approach and <u>Taylor-Shepard</u>.  Cf. <u>Singh</u>, 383 F.3d at 163 (noting that in cases involving disjunctive statutes of conviction "we have not taken the further step of looking to facts outside the charging instrument or further plea").  We may not open our review to other records or inquire into the factual basis for the underlying conviction as we did in <u>Nijhawan</u>.  Therefore, the BIA's inquiry should have been limited to the materials described in <u>Taylor-Shepard</u>.

Indeed, the Government seems to concede that the modified categorical approach and the <u>Taylor-Shepard</u> framework govern this case.  Nonetheless, the Government argues that the criminal information, including charges in counts of which Evanson was not convicted, and the judgment of sentence are appropriate records to consider under the modified

---

[5] In <u>Jeune</u>, we applied <u>Garcia</u> and looked beyond the statutory definition in applying the hypothetical federal felony test to 35 Pa. Stat. Ann. § 780-113(a)(30).  <u>Jeune</u>, 476 F.3d at 205.  It is not clear that the Pennsylvania statute is disjunctive in a sense that is relevant to the inquiry under the hypothetical federal felony test.  See <u>Singh</u>, 383 F.3d at 163 (holding that review was limited to formal categorical approach where the statute of conviction was not disjunctive in a meaningful way).  What is clear is that there is no basis in our precedent for looking beyond the modified categorical approach in applying the hypothetical federal felony test.

categorical approach.[6]  The Government is correct that the criminal information, as the relevant charging document, is an appropriate record to consider.  However, a court applying the modified categorical approach may only consider the charging document to the extent that the petitioner was actually convicted of the charges.[7]  Cf. Steele v. Blackman, 236 F.3d 130, 136-37 (3d Cir. 2001) (holding that to find that an alien was convicted of an aggravated felony "there must be a judicial determination beyond a reasonable doubt of every element of a felony or a constitutionally valid plea that encompasses each of those elements"); see also Alaka v. Att'y Gen., 456 F.3d 88 (3d Cir. 2006) (declining to consider the total loss amount stated in a multi-count indictment where Alaka pled guilty to only a single count with a lower loss amount).  Accordingly, we may consider only the possession with intent to distribute and conspiracy to possess with intent to distribute counts.

Further, we may not look to factual assertions in the judgment of sentence.  Facts a judge considers in making a discretionary sentencing determination are not necessarily admitted by the defendant.[8]  Cf., Commonwealth v. Lane, 941

_____

[6] In this case, the potential sources of information about Evanson's conviction are (1) the criminal complaint and its incorporated "affidavit of probable cause"; (2) the counts of the criminal information to which Evanson pled guilty; (3) other counts in the criminal information; (4) the judgment of sentence; and (5) Evanson's testimony before the I.J.  The Government does not argue that we may consider Evanson's testimony before the I.J.

[7] The Government also seems to urge the Court to consider the allegations in the affidavit of probable cause attached to the criminal complaint.  However, because the criminal complaint was superceded by the criminal information in this case, it is not the relevant charging document and is not an appropriate source under the modified categorical approach.

[8] The judgment of sentence also was not an appropriate basis for determining the amount of marijuana involved in Evanson's offense for a related reason.  8 U.S.C. § 1229a(c)(3)(A) requires that the Government prove removability by clear and convincing evidence.  The amount recited in the judgment of sentence was not itself necessarily based on clear and convincing evidence.

A.2d 34, 38 (Pa. Super. Ct. 2008). Accordingly, factual assertions contained only in a judgment of sentence may not be considered under the modified categorical approach. See In re Velazquez-Herrera, 24 I. & N. Dec. at 516-17 (holding that factual notations on Washington judgment of sentence did not "constitute proof of defendant's 'convicted conduct'"); see also United States v. Gutierrez-Ramirez, 405 F.3d 352, 358 (5th Cir. 2005) (holding that "district court erred in relying exclusively on the abstract of judgment to determine whether the conviction under [California law] was a 'drug trafficking offense,'" but that abstract of judgment might be permissible in combination with charging document); United States v. Navidad-Marcos, 367 F.3d 903, 909 (9th Cir. 2004) (holding that California abstract of judgment may not be used as only source of information under modified categorical approach because, among other things, the abstract of judgment "does not contain information as to the criminal acts to which the defendant unequivocally admitted in a plea colloquy before the court").

In this case, the only parts of the current record appropriately before the BIA were the statutory definition and those counts of the criminal information to which Evanson pled guilty. Thus, the only information—beyond the statutory definition—properly in the record is that Evanson's Pennsylvania offense involved marijuana. The BIA erred in considering the amount of marijuana involved in Evanson's offense, information contained only in the judgment of sentence and his testimony before the IJ. Our holding in Jeune that a marijuana conviction under 35 Pa. Stat. Ann. § 780-113(a)(30)—without proof of the amount involved or remuneration—is analogous to a federal misdemeanor therefore controls the outcome of the hypothetical federal felony test in this case. For this reason, we hold that the BIA also erred in its ultimate conclusion that Evanson's Pennsylvania conviction was a hypothetical federal felony and thus constituted an aggravated felony.

## III.

We will grant the petition and remand to the BIA to consider in the first instance whether Evanson's offense constituted an aggravated felony under the illicit trafficking

14

element test in light of <u>Garcia</u> and <u>Jeune</u>.[9]

<hr>

[9] Although we conclude that the BIA erred in considering more than the statutory definition and the charging document, and this conclusion—in addition to our holding in <u>Jeune</u>—also suggests that the Government cannot meet its burden under the illicit trafficking element test, we remand because the BIA did not consider this issue in its previous ruling.