**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 09-3810

———————————

UNITED STATES OF AMERICA

v.

OWEN JOHNSON,
also known as Patrick Woodburn,
also known as Paul Brown

Owen Johnson,
                        Appellant.

———————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-08-cr-00710-001)
District Judge: Honorable Petrese B. Tucker

———————————

Submitted Under Third Circuit LAR 34.1(a)
March 12, 2010

Before:  BARRY, JORDAN and VAN ANTWERPEN, *Circuit Judges*.

(Filed: April 19, 2010)

———————————

OPINION OF THE COURT

———————————

VAN ANTWERPEN, *Circuit Judge*.

Owen Johnson ("Johnson") appeals from a sentence imposed on September 18, 2009, and entered on September 30, by the United States District Court for the Eastern District of Pennsylvania, which sentenced him to twenty-four (24) months' imprisonment. For the reasons that follow, we will vacate the sentence and remand for re-sentencing.

**I.**

On November 20, 2008, a grand jury returned a single-count indictment charging Johnson, a citizen of Jamaica, with illegal re-entry after deportation in violation of 8 U.S.C. § 1326(a) and (b)(1). Johnson pled guilty to that charge on February 2, 2009.

A presentence investigation report ("PSR") was prepared, which calculated a base offense level of eight (8).[1] The PSR then applied a sixteen-level enhancement under § 2L1.2(b)(1)(A), asserting that Johnson has a prior conviction for a "crime of violence." The PSR predicated that enhancement upon Johnson's conviction in 1996 for terroristic threats under 18 Pa. Cons. Stat. Ann. § 2706. The criminal complaint underlying the conviction alleged that Johnson "knowingly or intentionally or recklessly caused/attempted to cause bodily injury to another, and/or attempted by physical menace to put another in fear of imminent serious bodily injury." (J.A. at 86.)

---

[1] The PSR relied on the 2008 version of the United States Sentencing Guidelines.

The PSR also recommended a three-level departure for acceptance of responsibility. With a resulting offense level of twenty-one (21), and a criminal history category of I, the Guidelines recommended a term of imprisonment of 37-46 months.

At the sentencing hearing on September 18, 2009, the District Court applied the sixteen-level enhancement over Johnson's objection. The court concluded that the "terroristic threats [conviction] in the circumstances of this case [was] an appropriate qualifier for the 16 level enhancement." (J.A. at 74.) Recognizing the severity of a sixteen-level enhancement, the court determined a variance was appropriate and imposed a sentence of twenty-four (24) months' imprisonment. Johnson filed this timely appeal.

**II.**

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We exercise plenary review of the District Court's interpretation of the Guidelines, and will review its determinations of fact for clear error. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2006) (en banc).

**III.**

On appeal, Johnson argues that the District Court mistakenly categorized his conviction for making a terroristic threat as a crime of violence under USSG § 2L1.2. Because he has raised a question of law, our review is plenary. *See United States v. Stinson*, 592 F.3d 460, 462 n.1 (3d Cir. 2010) ("We exercise plenary review over questions of law, such as whether a crime is a crime of violence.").

According to the commentary to § 2L1.2,

3

"'[c]rime of violence' means any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."

United States Sentencing Guidelines Manual § 2L1.2 comment. (n.1(B)(iii)) (2008).

Terroristic threats is not an enumerated crime. Therefore, we must determine whether it qualifies as a crime of violence under the residual clause.

It is "settled law in this Circuit that an offender has committed a 'crime of violence' only if he acted with an intent to use force." *United States v. Otero*, 502 F.3d 331, 335 (3d Cir. 2007) (quotation omitted). Put simply, reckless or grossly negligent conduct does not qualify as a crime of violence for purposes of imposing an enhancement under § 2L1.2(b)(1)(A). *Id.*

At the time of Johnson's conviction, Pennsylvania's terroristic threats statute read:

A person is guilty of a misdemeanor of the first degree if he threatens to commit any crime of violence with intent to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in *reckless* disregard of the risk of causing such terror or inconvenience.

18 Pa. Cons. Stat. Ann. § 2706 (emphasis added). To obtain a conviction, the prosecution "must prove: (1) the defendant made a threat to commit a crime of violence and (2) such threat was communicated with intent of terrorizing or with *reckless* disregard of the risk of causing terror." *Commonwealth v. Cancilla*, 649 A.2d 991, 992 (Pa. Super. Ct. 1994)

4

(emphasis added). Accordingly, because a Pennsylvania terroristic threats offense

requires a minimum *mens rea* of recklessness rather than intent, it is not a crime of

violence for purposes of § 2L1.2.

Moreover, even assuming *arguendo* that we can consider the criminal complaint

filed against Johnson in 1996 and ensuing judgment, neither document would resolve the

issue because they do not reveal Johnson's *mens rea*.[2] (*See* J.A. at 85 (finding Johnson

---

[2] "[A]bundantly clear" as the facts in the underlying criminal complaint may be, we may not consider Johnson's actual conduct. The modified categorical approach "is not meant to circumvent the categorical approach by allowing courts to determine whether the actual conduct of the individual defendant constituted a purposeful, violent and aggressive act." *United States v. Johnson*, 587 F.3d 203, 208 (3d Cir. 2009). Our analysis remains faithful to this Circuit's expressed understanding of the modified categorical approach. *See United States v. Stinson*, 592 F.3d 460, 463 (3d Cir. 2010) (acknowledging *Johnson*'s "reminder that the Supreme Court's decision in *Shepard* foreclosed the court from inquiring into the facts underlying the earlier conviction").

Therefore, the dissent's contention that we can look at the underlying documents is misplaced. The dissent argues that we can look to the underlying criminal complaint to discern the *mens rea* with which Johnson acted. To the extent we can look at the document, it is only to determine with which *mens rea* Johnson was charged and convicted under the statute, which would be entirely consistent with the modified categorical approach. *See Johnson*, 587 F.3d at 208. We cannot consider Johnson's actual conduct to determine with which *mens rea* he acted on the particular occasion, which, all semantics aside, is precisely the course pursued by the dissent. Moreover, the dissent's approach implicates the exact concerns which constrain our review of the underlying documents – the cursory judgment in this case does not indicate why or for what *charged* conduct Johnson was *actually* convicted. *See Shepard v. United States*, 544 U.S. 13, 25-26 (2005) (noting constitutional concerns of re-trying prior convictions).

The criminal complaint and judgment do not answer this question for us, and that is as far as we may pursue the analysis under existing Supreme Court precedent. *See also Chambers v. United States*, 129 S. Ct. 687, 694 (2009) (Alito, J., concurring) ("[O]nly Congress can rescue the federal courts from the mire into which . . . *Taylor*'s 'categorical approach' [has] pushed us.").

"guilty as to Terroristic Threats"); *id.* at 86 (alleging that Johnson acted "knowingly or intentionally or *recklessly*") (emphasis added).)[3]

## IV.

For the foregoing reasons, we will affirm Johnson's conviction, but vacate his sentence and remand to the District Court for re-sentencing.

---

[3] Although we held in *Bovkun v. Ashcroft*, 283 F.3d 166, 170 (3d Cir. 2002), that an alien's violation of Pennsylvania's pre-amendment terroristic threats statute was a crime of violence under 18 U.S.C. § 16(a), both parties here concede that *Bovkun* is not controlling. We agree.

*United States v. Johnson*, No. 09-3810
JORDAN, *Circuit Judge*, dissenting

The majority concludes that "because a Pennsylvania terroristic threats offense requires a minimum *mens rea* of recklessness rather than intent, it is not a crime of violence for purposes of 2L1.2." (Maj. Op. at 5.) In my view, however, the possibility that the statute can be violated by recklessness does not mean that the state cannot charge and convict someone of intentional acts that violate the statute. Because I believe that the criminal complaint underlying Johnson's terroristic threats conviction unmistakably reveals that he was charged and convicted with committing that crime intentionally, I would affirm the District Court's conclusion that the conviction constitutes a crime of violence under § 2L1.2, and I respectfully dissent.

Johnson's conviction stems from an altercation in which he threatened to kill another person. According to the criminal complaint associated with that incident, Johnson "approach[ed] the complainant ... and threaten[ed] to kill her." (App. at 86.) He then brandished "a beer bottle at her, [struck] her on the hand[,]" and "again threaten[ed] to kill her ... ." (*Id.*) He was convicted of terroristic threats under 18 Pa. Cons. Stat. Ann. § 2706 on June 24, 1996.

A conviction qualifies as a crime of violence under § 2L1.2 if it satisfies two criteria. First, the defendant must have committed the crime with an intentional *mens rea*. *United States v. Otero*, 502 F.3d 331, 335 (3d Cir. 2007). Second, the crime must be either expressly enumerated in the notes to § 2L1.2, or it must have "as an element the use, attempted use, or threatened use of physical force against the person of another."

U.S. SENTENCING GUIDELINES MANUAL § 2L1.2 cmt. 1(B)(iii) (2008) [hereinafter

U.S.S.G.]. Because the crime of terroristic threats is not specifically mentioned in the

notes to § 2L1.2, Johnson's prior conviction can be a crime of violence only if it satisfies

the latter alternative. I will address *mens rea* before turning to the definition of "crime of

violence" in the Guidelines.

**A.**     *Mens Rea*

The majority concludes that Johnson's terroristic threats conviction does not

qualify as a crime of violence because, by definition, a terroristic threats conviction may

rest upon either the "intent to terrorize another or ... reckless disregard" toward the risk of

doing so. 18 Pa. Cons. Stat. Ann. § 2706. A crime of violence requires an intentional

mental state, and, the majority reasons, we cannot identify the *mens rea* Johnson harbored

because the criminal complaint in the underlying case does not specify his mental state. I

disagree that we cannot discern Johnson's mental state from that complaint.

To determine whether a prior conviction satisfies the requirements of a sentencing

enhancement, we ordinarily employ an analytical method known as the categorical

approach. *Taylor v. United States*, 495 U.S. 575, 600 (1990); *see also United States v.*

*Johnson*, 587 F.3d 203, 208 (3d Cir. 2009). Following that approach, we do not look at

the facts of the case at all but instead evaluate the legal elements of the prior offense and

determine whether they satisfy the requirements of the enhancement. *Taylor*, 495 U.S. at

600. However, "[w]here a statute criminalizes different kinds of conduct, some of which

would constitute crimes of violence while others would not," *Johnson*, 587 F.3d at 208,

we turn from a strict categorical approach to what is called a "modified categorical approach" wherein we may examine "the nature of the conviction itself and those elements that the [fact-finder] necessarily found through an examination of judicial record evidence." *Nijhawan v. Att'y Gen. of U.S.*, 523 F.3d 387, 393 (3d Cir. 2008). In undertaking that examination, we may consider "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or ... some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005). The modified categorical approach can only be used to identify those facts that form the essential basis of the defendant's conviction; it does not permit delving into facts that were not necessary to establish the crime for which the defendant was ultimately convicted. *Johnson*, 587 F.3d at 208.

I believe that the modified categorical approach may be appropriately applied to this case to determine whether Johnson communicated a threat with the intent to terrorize the victim or merely with reckless disregard toward her safety.[1] *See id.* at 212-14

---

[1]The majority, relying upon our decision in *Otero*, suggests that a prior conviction cannot qualify as a crime of violence if it rests upon a statute that criminalizes multiple forms of *mens rea* and only some of those mental states would support the enhancement. That is a faithful reading of *Otero*, in which we held that a conviction for simple assault under Pennsylvania law did not qualify as a crime of violence under § 2L1.2 because the Pennsylvania simple assault statute requires merely a finding of recklessness. 502 F.3d at 335 (citing *Popal v. Gonzales*, 416 F.3d 249, 254 (3d Cir. 2005) ("Because Pennsylvania simple assault requires a *mens rea* of recklessness, rather than intent, it is not a crime of violence ... .")). However, I believe that we can and should revisit our holding in *Otero* in light of the Supreme Court's intervening decision in *Begay v. United States*, 553 U.S.

(recognizing that a Pennsylvania simple assault may be predicated upon either intentional

or reckless conduct and remanding to the district court to identify the mental state with

---

137, 128 S. Ct. 1581 (2008). *See In re Krebs*, 527 F.3d 82, 84 (3d Cir. 2008) ("A panel of this Court may reevaluate the holding of a prior panel which conflicts with intervening Supreme Court precedent.").

In *Begay*, the Supreme Court provided guidance for applying sentencing enhancements under the Armed Career Criminal Act ("ACCA"), which increases a sentence based on an enumerated list of prior crimes as well as on any crime that "presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The Court held that, before enhancing a sentence for a non-enumerated crime, a court must ensure that the prior crime poses a risk commensurate with other crimes enumerated in the Act. *Begay*, 128 S. Ct. at 1584-85. The Court further explained that the defendant must have committed that crime with a purposeful *mens rea*. *Id.* at 1586-88. A conviction based upon reckless conduct cannot support such an enhancement. *Id.* at 1587 (observing that Congress generally predicates sentencing enhancements upon intentional conduct because an intentional *mens rea* "show[s] an increased likelihood that the offender is the kind of person who might" engage in other forms of criminal activity).

In *Johnson*, 587 F.3d at 208, we interpreted *Begay* to invite inquiry into the underlying record when a prior conviction could potentially rest on either an intentional or a reckless *mens rea*. *Johnson* required us to consider whether the Pennsylvania simple assault statute, the same statute at issue in *Otero*, qualified as a crime of violence for purposes of the career-offender provisions of the Guidelines. We first compared simple assault with other crimes enumerated in the career-offender provisions, which include burglary, arson, extortion, and any crime that involves a threat against another person. We found that simple assault poses a risk akin to those crimes. *Id.* at 211. We then held that, after *Begay*, it is appropriate to look to the record of the underlying case to determine whether a defendant was convicted of simple assault based on intentional conduct. *Id.* at 212 (holding that "an intentional or knowing violation of the [Pennsylvania simple assault statute] is a crime of violence" for purposes of the career-offender provisions of the Guidelines.).

In my view, *Begay* and *Johnson* overcome *Otero*'s hesitancy to look to the underlying record for the purpose of identifying a defendant's *mens rea*. Applying *Begay* and *Johnson* to the instant matter, I believe it is appropriate to look to the criminal complaint to identify the *mens rea* with which defendant Johnson acted. For the reasons described below, I would find that he acted in an intentional manner. Thus, unlike my colleagues, I do not believe that *Otero* continues to limit our ability to assess the criminal complaint to identify the *mens rea* with which Johnson acted.

4

which the defendant acted). As earlier noted, the criminal complaint from Johnson's state court proceedings reflects that he accosted the victim and threatened to kill her. He then brandished "a beer bottle at her, [struck] her on the hand[,]" and "again threaten[ed] to kill her ... ." (App. at 86.) As the majority notes, the complaint does not specify a particular *mens rea* with which Johnson acted, reciting only the statutory prerequisite that he acted "knowingly or intentionally or recklessly." (*Id.*) However, it seems abundantly clear that the utterance of a death threat and the physical gestures and contact that accompanied it were not merely reckless accidents. They were intentional acts and are the only acts specified as constituting the crime. Thus, I would apply the modified categorical approach to identify the *mens rea* supporting Johnson's convictions, and, based on the criminal complaint, would agree with the District Court that he acted in an intentional manner when he violated § 2706.[2]

---

[2]The fundamental disagreement between the majority's view and mine is captured in the majority's statement that, "to the extent we can look at the ... [criminal complaint], it is only to determine with which *mens rea* Johnson was charged and convicted under the statute ... . We cannot take the next step the dissent advocates, which is to consider Johnson's actual conduct to determine with which *mens rea* he acted on the particular occasion." (Maj. Op. at n. 2.) I have been unable to persuade my colleagues that my analysis of this case is not an impermissible second step, that it is instead focused on the first analytical step outlined in the quoted statement. Contrary to the misimpression that I have evidently left, my concern is not grounded in idle curiosity about the behavior Johnson exhibited. I view this case as presenting a circumstance in which one of the crucial questions is indeed which *mens rea* is implicated by Johnson's charge and conviction, and I believe the District Court rightly looked to the criminal complaint to discern the answer to that question. To recap, the terroristic threats statute is broad enough to cover both reckless and intentional threats. Again, "[w]here a statute criminalizes different kinds of conduct, some of which would constitute crimes of violence while others would not, the court must apply a modified categorical approach ...

B.     *Threatened Use of Force Against Another*

Notwithstanding an intentional *mens rea*, Johnson's terroristic threats conviction

qualifies as a crime of violence under § 2L1.2 only if the threatened use of force against

the person of another was an essential element of his offense.  U.S.S.G. § 2L1.2 cmt.

1(B)(iii).  We must therefore identify the elements of the crime of terroristic threats to

determine whether the crime entailed a risk of force against another person.

At the time of Johnson's conviction, 18 Pa. Cons. Stat. § 2706 criminalized

"threaten[ing] to commit any crime of violence with intent to terrorize another or to cause

evacuation of a building ... or otherwise to cause serious public inconvenience ... ."

Pennsylvania courts have recognized that the phrase "crime of violence," as used in

§ 2706, encompasses conduct, such as threatening to commit homicide, that endangers the

physical safety of another person.  *See Commonwealth v. Ferrer*, 423 A.2d 423, 424 (Pa.

Super. Ct. 1980) (concluding that a threat to commit murder qualifies as a threat to

commit a crime of violence for purposes of § 2706).  However, the statute also reaches

conduct, such as threatening arson, that endangers another's property but does not

---

to determine the particular part of the statute under which the defendant was actually
convicted." *Stinson*, 592 F.3d at 462.  Thus, for me at least, the question becomes
whether we can discern from the charging document whether the state was prosecuting
Johnson for a reckless or an intentional threat, and the answer is we can.  It charged and
convicted him of making an intentional threat.  The unfortunate insertion of boilerplate
language from the statute including the word "recklessly" along with "intentionally"
created an ambiguity that evaporates in light of the statements in the charging document
itself describing Johnson's culpability.  *Shepard* tells us we can look at the charging
document to determine which part of the statute the defendant violated, 544 U.S. at 26,
and, like the District Court, I would do so.

6

necessarily place a person's physical safety at risk. *See Commonwealth v. Cancilla*, 649 A.2d 991, 992-93 (Pa. Super. Ct. 1994) (construing arson as a "crime of violence" for purposes of § 2706). Hence, some convictions for terroristic threats concern threats of physical force against another person, placing the conviction within § 2L1.2, while other convictions do not. In other words, the phrase "crime of violence" has a broader meaning under § 2706 than under § 2L1.2, so that a threat to commit a "crime of violence" as that phrase is used in § 2706 may – but does not necessarily – qualify as a crime of violence for purposes of § 2L1.2.

Faced with a predicate offense that sometimes qualifies as a § 2L1.2 crime of violence, I would again apply the modified categorical approach and look to the judicial record of Johnson's state proceedings for the purpose of "determining the elements necessarily found by [the fact-finder], or admitted by the defendant in pleading guilty." *Evanson v. Att'y Gen. of U.S.*, 550 F.3d 284, 290 n.4 (3d Cir. 2008).[3] The criminal

---

[3]Johnson argues that the modified categorical approach is unhelpful because § 2706 does not distinguish threats that imperil personal safety from those that place property at risk. He suggests that § 2706's lack of disjunctive phrasing separating the types of threats (i.e., threats to people versus threats to property) makes inquiry into the facts improper because a terroristic threats conviction cannot categorically trigger an enhancement under § 2L1.2. I disagree. Application of the modified categorical approach is not driven by the "typography used by the statute's drafters," *Singh v. Ashcroft*, 383 F.3d 144, 163 (3d Cir. 2004), but by inquiry into whether the statute is "disjunctive in a meaningful way," *Evanson*, 550 F.3d at 292 n.5. Certainly, most statutes to which the modified categorical approach applies contain disjunctive grammar; however, in some cases a statute may be conceptually disjunctive even though its authors chose not to use the word *or* when drafting it. Thus, the Fourth Circuit has applied the modified categorical approach to a conviction for common law assault because, although the elements of the offense were not phrased disjunctively, the offense could be committed in various ways, only some of

7

complaint that led to Johnson's Pennsylvania conviction indicates that he struck the

victim and threatened her life. Neither the charging instrument nor the court's verdict

form reveals any threat against property. Thus, the record of Johnson's state case

unequivocally establishes that he was convicted under § 2706 based on a factual finding

beyond a reasonable doubt that he threatened the safety of another person.[4] That threat

which triggered a sentencing enhancement. *See United States v. Coleman*, 158 F.3d 199, 202 (4th Cir. 1998) (looking to the underlying offense conduct to determine whether a common law assault qualified as a violent felony even though the elements of the former crime are not phrased disjunctively), *cited with approval in United States v. Shabazz*, 233 F.3d 730, 732 (3d Cir. 2000). The First Circuit has likewise applied the modified categorical approach to determine whether a defendant's conviction under the Massachusetts assault and battery statute qualified as a violent felony for federal sentencing purposes because the statute, while not phrased in the disjunctive, had been judicially interpreted to encompass both violent and non-violent conduct. *See United States v. Harris*, 964 F.2d 1234, 1235-37 (1st Cir. 1992), *overruled on other grounds by Shepard*, 544 U.S. 13.

The present case is analogous to those precedents. Section 2706, as it has been interpreted by Pennsylvania courts, criminalizes any threat to commit a crime of violence against a person *or* to commit a crime of violence against property. This distinction is implicit in the statute, and it is no less significant because it is unspoken than if it had expressly appeared in the statutory text. The modified categorical approach should apply to such a scenario because statutory construction reveals that a crime may be committed in multiple ways, only some of which trigger an enhancement. *Cf. Nijhawan*, 523 F.3d at 393 (stating that the modified categorical approach typically "involve[s] 'divisible' statutes, where the prior criminal offense, by statute, includes a wide range of activity but the requisite enhancing provision ... requires one or more particular elements that may or may not have been found as part of the conviction"). I would therefore look to the facts of the underlying conviction to determine whether the defendant violated the statute in a manner that qualifies for the enhancement. Thus, I believe it would be proper to rely upon the charging instrument in Johnson's state criminal case to determine whether his terroristic threats conviction implicates the sentencing enhancement set forth in § 2L1.2.

[4] That this information can be gained from the criminal complaint distinguishes this case from *United States v. Ortiz-Gomez*, 562 F.3d 683 (5th Cir. 2009). In that case, the Fifth Circuit held that the making of terroristic threats under § 2706 did not qualify as a crime of violence under § 2L1.2. *Id*. at 687. However, in that case, it was unclear

8

forms an essential element of his conviction. Therefore, I would hold that Johnson's conviction rests upon a threat that endangered the safety of a person rather than property.

Accordingly, I would conclude that the modified categorical approach has two applications in Johnson's case. First, I would apply it to identify the *mens rea* with which Johnson violated the terroristic threats statute. That assessment reveals that he acted with an intentional mental state. Second, I would apply the approach to the phrase "crime of violence," as used in § 2706, and would find that Johnson committed the crime of terroristic threats by communicating a threat against the person of another. Using this approach, his crime is revealed to have "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. 1(B)(iii). I thus believe that the District Court was correct in looking to the criminal complaint to enhance Johnson's sentence under § 2L1.2, and I would affirm the sentence the Court imposed.

---

whether the defendant had threatened the safety of another person or threatened a property-based offense. *Id*. at 685. Thus, the underlying record was insufficient to enable the court to determine whether the fact-finder had convicted the defendant based on a threat against personal safety as required by § 2L1.2. By contrast, the charging document in Johnson's case indicates that he threatened to kill another person. Application of the enhancement is appropriate under the modified categorical approach because the underlying record establishes that an intentional threat against another person's safety was an essential element of Johnson's conviction for terroristic threats.