PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 18-1765

WILLY DE JESUS ROSA,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondent

On Petition for Review from
the Board of Immigration Appeals
(Agency No.: A043-843-657)

Argued March 14, 2019

Before:  McKEE, ROTH, and FUENTES, *Circuit Judges*

(Opinion filed:  January 29, 2020)

Raymond P. D'Uva, I
Alexandra Miron
Law Offices of Raymond P. D'Uva
17 Academy Street
Suite 1000
Newark, NJ 07102

Derek A. Decosmo            (Argued)
DeCosmo & Rolon
511 Market Street
Camden, NJ 08102
                    *Counsel for Petitioner*

Matthew B. George          (Argued)
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
                    *Counsel for Respondent*

Eric M. Mark, Esq.          (Argued)
201 Washington Street
Newark, NJ 07102
                    *Counsel for Amici Curiae American*
                    *Immigration Lawyers Association*

---

OPINION OF THE COURT

---

FUENTES, <u>Circuit Judge</u>

This appeal asks us to address an issue of first impression under the Immigration and Nationality Act (the "Act") that carries implications beyond immigration law: whether the categorical approach, which compares the elements of prior convictions with the elements of crimes under federal law, permits comparison with any federal crime, or only the "most similar" one. That issue arises in noncitizen Willy de Jesus Rosa's petition for review from the determination of the Board of Immigration Appeals that his prior New Jersey convictions for possession and sale of a controlled substance within 1,000 feet of a school constitute aggravated felonies under the Act. Specifically, he challenges the Board's conclusion that his prior convictions could be compared not only to the federal statute proscribing distribution near a school but also to the federal statute prohibiting distribution generally. We agree that the Board erred in that conclusion and will grant the petition for review and remand for further proceedings.

## I. Background

The facts in the administrative record before us may be summarized as follows:

Rosa, a citizen of the Dominican Republic, was admitted to the United States as a legal permanent resident in 1992, when he was still a child. When his family arrived in the United States, they resided in Paterson, New Jersey, where Rosa eventually attended high school. While Rosa was in high school, his family, including five of his seven siblings, moved out of state; Rosa remained in New Jersey to complete high school.

3

Shortly after he graduated from high school in 2001, Rosa lost his job as a car valet and became associated with the "wrong people."[1] In 2003, he was arrested for drug charges, and on February 20, 2004, he was convicted following a guilty plea in New Jersey Superior Court for the possession and sale of a controlled substance—cocaine—within 1,000 feet of school property in violation of § 2C:35-7 of the New Jersey statutes (the "New Jersey School Zone Statute").[2] Eleven years later, the Department of Homeland Security served Rosa with a Notice to Appear, charging that Rosa was removable for the conviction of a controlled substances offense[3] and of an "aggravated felony"[4] for a "drug trafficking crime."[5]

Rosa subsequently appeared before an Immigration Judge, where he conceded removability for the controlled substances offense. However, he denied removability for the aggravated felony, which would have precluded him from being eligible for cancellation of removal.[6] As required by

---

[1] AR 234.

[2] Rosa was charged with the crimes in two separate indictments. In relevant part, § 2C:35-7 provides, "Any person who violates [N.J. Rev. Stat. § 2C:35-5(a)] by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance . . . while on any school property . . . or within 1,000 feet of such school property or a school bus, or while on any school bus, is guilty of a crime of the third degree . . . ." N.J. Rev. Stat. § 2C:35-7 (2013).

[3] 8 U.S.C. § 1227(a)(2)(B)(i).

[4] *Id.* § 1227(a)(2)(A)(iii).

[5] *Id.* § 1101(a)(43)(B).

[6] 8 U.S.C. § 1229b(a)(3).

4

Supreme Court precedent, the Immigration Judge applied the "categorical approach"[7] to determine if Rosa's state convictions qualified as an aggravated felony. Under the categorical approach, the Immigration Judge compared Rosa's statute of conviction, the New Jersey School Zone Statute, with the federal statute for distribution "in or near schools and colleges" (the "Federal School Zone Statute").[8] The Immigration Judge concluded that the state statute swept more broadly than its federal counterpart in both its proscribed

[7] As described below, the categorical approach compares "whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a corresponding aggravated felony." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007)). In making that determination, a court looks "not to the facts of the particular prior case," but instead only to the elements of the state statute and the "generic" federal analog. *Duenas-Alvarez*, 549 U.S. at 186 (citing *Taylor v. United States*, 495 U.S. 575, 598 (1990)). If the elements of the state conviction "categorically fit[]" within the elements of an appropriate federal analog, then the state conviction constitutes an aggravated felony. *Moncrieffe*, 569 U.S. at 190 (citing *Duenas-Alvarez*, 549 U.S. at 186).

[8] 21 U.S.C. § 860. In relevant part, § 860 provides, "Any person who violates [21 U.S.C. § 841(a)(1) or 856] by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school . . . is . . . subject to [] twice the maximum punishment authorized by [18 U.S.C. § 841(b)] . . . ." *Id.* § 860.

conduct and its definition of "school property."[9] Consequently, under the categorical approach, Rosa's state conviction was not an "aggravated felony" under federal law,[10] and he was eligible for cancellation of removal, which the Immigration Judge granted.[11]

The Department of Homeland Security appealed to the Board of Immigration Appeals. The Board determined that, under the categorical approach, Rosa's state conviction could be compared to the federal statute generally prohibiting the distribution of a controlled substance (the "Federal Distribution Statute")[12] as a lesser included offense of the Federal School Zone Statute. The Board concluded that the Federal Distribution Statute encompassed the elements of Rosa's state statute of conviction and that the state conviction consequently qualified as an aggravated felony. The Board

---

[9] A 30-31.

[10] A 33.

[11] Cancellation of removal is barred for noncitizens convicted of aggravated felonies, as defined in 8 U.SC. § 1101(a)(43). 8 U.S.C. § 1229b(a)(3). The Immigration Judge also determined that Rosa was removable for a controlled substance offense under 8 U.S.C. § 1227(a)(2)(B)(i), which does not bar cancellation of removal. Rosa did not challenge that determination before the Board and does not challenge it before us.

[12] 21 U.S.C. § 841(a). That section provides, "[I]t shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ." *Id.*

6

therefore determined that Rosa was ineligible for cancellation of removal and ordered him removed. Rosa timely appealed to this Court.

## II. Discussion[13]

On appeal, Rosa contends that the Board of Immigration Appeals erred by concluding that his prior convictions could be compared to any federal analog under the categorical approach. According to Rosa, a prior conviction can only be properly compared to the "most similar" federal analog. The Government responds that nothing in the Immigration and Nationality Act prevents it from selecting any federal analog, especially those that would be lesser included offenses of the prior conviction. We agree with Rosa that the Board erred and hold that the Board's conclusion runs afoul of longstanding federal practice. We conclude, however, that the record before

---

[13] The Board of Immigration Appeals had jurisdiction over the Department of Homeland Security's appeal from the Immigration Judge's cancellation of Rosa's removal under 8 C.F.R. § 1003.1(b). We have jurisdiction to review the Board's final order of removal, 8 U.S.C. § 1252(a)(5), limited to "constitutional claims or questions of law," *id.* § 1252(a)(2)(C), (D). We review the Board's determination that Rosa's state convictions constituted an aggravated felony *de novo*. *Evanson v. Att'y Gen.*, 550 F.3d 284, 288 (3d Cir. 2008). "When the BIA issues its own decision on the merits, rather than a summary affirmance, we review its decision, not that of the IJ." *Singh v. Att'y Gen.*, 839 F.3d 273, 282 (3d Cir. 2016) (quoting *Chavez-Alvarez v. Att'y Gen.*, 783 F.3d 478, 482 (3d Cir. 2015)).

7

us is insufficient to properly compare the New Jersey and Federal School Zone Statutes and remand for further proceedings to supplement the record.

## A. Applicable Law

The Board determined that Rosa's prior convictions constituted aggravated felonies under the Immigration and Naturalization Act pursuant to what is known as the "categorical approach." The categorical approach "asks only whether the elements of a federal criminal statute can be satisfied by reference to the actual statute of conviction."[14] Consequently, a court looks "'not to the facts of the particular prior case,' but instead to whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a corresponding aggravated felony."[15] If the elements of the state conviction "fit[]" within the elements of the appropriate federal offense, then the state conviction constitutes an aggravated felony.[16] Consequently, "a state crime cannot qualify as an [aggravated felony] if its elements are broader than those of a listed generic offense."[17]

Although the categorical approach originally emerged in the Supreme Court's decisions on the Armed Career

---

[14] *Evanson*, 550 F.3d at 292 (quoting *Singh v. Ashcroft*, 383 F.3d 144, 161 (2004)).

[15] *Moncrieffe*, 569 U.S. at 190 (quoting *Duenas-Alvarez*, 549 U.S. at 186).

[16] *Id.*

[17] *Mathis v. United States*, 136 S. Ct. 2243, 2251 (2016); *accord Taylor*, 495 U.S. at 590.

8

Criminal Act,[18] courts have extended the approach to certain "aggravated felonies" under the Immigration and Nationality Act.[19] In particular, the categorical approach is applied to determine if a drug offense may be deemed an "aggravated felony"[20] through "either one of two routes"[21] under the Act: (1) for "illicit trafficking in a controlled substance,"[22] which "must involve 'the unlawful trading or dealing of a controlled substance'"[23] and was held by the Board not necessary for it to consider to reach its decision here; or, (2) for "a drug

---

[18] 18 U.S.C. § 924(e).

[19] *Moncrieffe*, 569 U.S. at 190; *cf. Nijhawan v. Holder*, 557 U.S. 29, 38 (2009) (interpreting the language Congress used in 8 U.S.C. §1101(a)(43)(M)(i) for "fraud or deceit" as requiring a "circumstance-specific" rather than categorical approach); *Singh*, 383 F.3d at 148 ("[I]n some cases the language of the particular subsection of 8 U.S.C. § 1101(a)(43) at issue will invite inquiry into the underlying facts of the case, and in some cases the disjunctive phrasing of the statute of conviction will similarly invite inquiry into the specifics of the conviction.").

[20] 8 U.S.C. § 1101(a)(43).

[21] *Gerbier v. Holmes*, 280 F.3d 297, 313 (3d Cir. 2002). Although the language of § 1101(a)(43) appears to "create[] a single category" of "illicit trafficking," with a subcategory for "drug trafficking crimes," we have previously concluded that the legislative history of the section shows that Congress sought to create two distinct routes for establishing a drug offense as an aggravated felony. *Id.* at 307 n.8 (citing *Steele v. Blackman*, 236 F.3d 130, 136 n.5 (3d Cir. 2001)).

[22] 8 U.S.C. § 1101(a)(43)(B).

[23] *Evanson*, 550 F.3d at 289.

9

trafficking crime,"[24] defined as "any felony punishable under the Controlled Substances Act."[25]

Section 924(c)(4) not only incorporates the Controlled Substances Act in defining a "drug trafficking crime," but it "encompasses all state offenses that 'proscrib[e] conduct punishable as a felony under [the CSA].'"[26] The categorical approach, sometimes labelled the "hypothetical federal felony approach,"[27] is applied to determine whether a state offense defines a felony under the Controlled Substances Act.[28] If the

---

[24] 8 U.S.C. § 1101(a)(43)(B).

[25] 18 U.S.C. § 924(c)(2), *cited and incorporated in* 8 U.S.C. § 1101(a)(43)(B).

[26] *Moncrieffe*, 569 U.S. at 192 (alterations in original) (quoting *Lopez v. Gonzales*, 549 U.S. 47, 60 (2006)).

[27] *See Singh*, 383 F.3d at 157. In this Circuit, "[t]he hypothetical federal felony approach is essentially the formal categorical approach of *Taylor*, as applied to a specific federal statute." *Id.*; *Evanson*, 550 F.3d at 292 n.5; *Gerbier*, 280 F.3d at 315. To the extent that other Circuits have framed the hypothetical felony approach as asking whether "the 'conduct' that gave rise to [the prior] conviction would have been punished as a felony in federal court," it has been rejected by the Supreme Court. *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 580 (2010). Instead, as described here, we are limited to examining the elements of the prior conviction.

[28] *Moncrieffe*, 569 U.S. at 190 ("When the Government alleges that a state conviction qualifies as an 'aggravated felony' under the INA, we generally employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the INA." (citing *Nijhawan*, 557 U.S. at 33-38;

10

state offense is narrower than, or the same as, the generic federal analog under the Controlled Substance Act, it constitutes an aggravated felony under the Immigration and Nationality Act.[29]

Before determining if the state offense is narrower or broader than its federal analog, a court must determine which state offense the defendant was convicted of. If the relevant state statute defines a single crime—known as an "indivisible" statute—the analysis is "straightforward."[30] If, however, the statute defines multiple crimes in multiple subdivisions or by "list[ing] elements in the alternative," it is "divisible," and the analysis requires an extra step described below.[31] To determine whether a statute is divisible or indivisible, courts are permitted to examine the statute itself and state court decisions and to "peek" at the "record of a prior conviction,"[32] including the charging documents, plea agreement, plea colloquy, and jury instructions.[33] A statute may be indivisible even if it has disjunctive phrasing—listing various components

---

*Duenas-Alvarez*, 549 U.S. at 185-187)); *Lopez*, 549 U.S. at 60; *id.* at 55 ("Unless a state offense is punishable as a federal felony it does not count.").

[29] *Mathis*, 136 S. Ct. at 2248.

[30] *Id.*

[31] *Id.* at 2249.

[32] *Id.* at 2256-57 (quoting *Rendon v. Holder*, 782 F. 3d 466, 473-474 (9th Cir. 2015) (Kozinski, J., dissenting from denial of reh'g en banc)).

[33] *Id.* at 2249, 2253, 2256-67.

as alternatives—if it merely "enumerates various factual means of committing a single element."[34]

An indivisible statute defining a single crime is assessed under the "formal categorical approach" outlined above.[35] However, a divisible statute listing multiple crimes with different elements requires courts to go an extra step beyond the categorical approach and employ the "modified categorical approach" to determine of which crime the defendant was convicted.[36] "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'"[37] Under the modified categorical approach, the court may look to a limited class of documents—"for example, the indictment, jury instructions, or plea agreement and colloquy"—solely to determine under which portion of the statute and under which elements—the defendant was convicted.[38] Once a court has used the modified

---

[34] *Id.* at 2249. For example, in *Mathis* itself, the Supreme Court concluded that Iowa's burglary statute, which defined burglary as occurring in "any building, structure, [or] land, water, or air vehicle," was indivisible because the Iowa Supreme Court had concluded that the listed locations were merely "alternative ways of satisfying a single locational element." *Id.* at 2250 (alteration in original) (emphasis omitted) (quoting Iowa Code §702.12 (2013)).

[35] *Evanson*, 550 F.3d at 290.

[36] *Id.*

[37] *Mathis*, 136 S. Ct. at 2248 (quoting Elements of Crime, Black's Law Dictionary (10th ed. 2014)).

[38] *Id.* These documents are often referred to as "*Shepard* documents" for the case in which the Supreme Court chiefly

categorical approach to "determine what crime, with what elements, a defendant was convicted of," then it may "compare that crime, as the categorical approach commands, with the relevant generic offense."[39]

It is under this law that we analyze Rosa's arguments.

## B. The Categorical Approach Is Limited to the Most Similar Federal Analog

We conclude, first, that the Board erred in permitting Rosa's statute of conviction to be compared to multiple federal analogs. Instead, longstanding practice in federal court limits that comparison to only the most similar federal analog.

### 1. Longstanding Federal Practice

First, the Board's determination runs afoul of longstanding practice in the Supreme Court and this Court that has treated prior convictions as having only one federal analog. That practice is underscored by the Supreme Court's reasoning in *Taylor v. United States*[40] and its subsequent decisions.

---

outlined their use, *Shepard v. United States*, 544 U.S. 13, 26 (2005). The Supreme Court envisions use of the *Shepard* documents as a two-step process, first to determine whether "an alternatively phrased statute" lists elements or means, and second, if the items listed in the statute are elements, to determine which of those elements were implicated in the defendant's conviction. *Mathis*, 136 S. Ct. at 2256 & n.7.

[39] *Mathis*, 136 S. Ct. at 2249.

[40] 495 U.S. 575.

13

In *Taylor*, the Court rejected the Eighth Circuit's conclusion that "burglary" under the Armed Career Criminal Act "means 'burglary' however a state chooses to define it."[41] The Court reasoned that Congress could not have intended to premise application of that Act on the "vagaries"[42] of state law. Various states, for example, might not have any offense "formally labeled 'burglary,'" but instead multiple statutes covering "breaking and entering."[43] Other states might cover shoplifting or theft from automobiles[44] and coin machines under the umbrella of "burglary."[45] The Court reasoned that each of these statutes, despite their many variations, must be covered by "some uniform definition independent of the labels" and statutory schemes "employed by the various States' criminal codes."[46] That uniform definition was to cover prior convictions that, "while not called 'burglary,' *correspond in substantial part* to generic burglary."[47]

The Supreme Court's subsequent decisions regarding the categorical approach emphasize that a prior conviction will be compared to the most similar federal analog. For example, in *Shepard v. United States*, the Supreme Court concluded that the defendant's prior convictions under Massachusetts law

---

[41] *Id.* at 579 (quoting *United States v. Taylor*, 864 F.2d 625, 627 (8th Cir. 1989)).

[42] *Id.* at 588.

[43] *Id.* at 591 (citing Mich. Comp. Laws § 750.110 (1979)).

[44] *Id.* (citing Cal. Penal Code Ann. § 459 (West Supp. 1990)).

[45] *Id.* (citing Tex. Penal Code Ann. §§ 30.01-30.05 (1989 and Supp. 1990)).

[46] *Id.* at 592.

[47] *Id.* at 599 (emphasis added).

were broader than "generic" federal burglary.[48]  Although the state statutes were merely labelled "breaking/entering,"[49] the Court nonetheless compared them to "the generic offense" for burglary.[50]  According to the *Shepard* Court, a prior conviction could fall within "*the* generic limit"[51] only if evident from the statute, a plea colloquy regarding "*the* generic fact," or "*the* generic implication of a jury's verdict."[52]

Similarly, in *Mathis*, the Court described the categorical approach as comparing a statute of conviction "with the relevant generic offense."[53]  Likewise, in *Descamps v. United States*, the Court described "the generic offense" for a particular statute of conviction as "the offense as commonly understood."[54]  Those statements, with the use of the definite article "the," all presuppose that a given statute of conviction has a single generic analog.

Our own jurisprudence has similarly underscored that prior convictions will only have a single generic federal analog.  In *Gerbier v. Holmes*, we concluded that a Delaware conviction for possession of cocaine did not qualify as an aggravated felony.[55]  In reaching that conclusion, we rejected

---

[48] 544 U.S. at 17.

[49] Mass. Gen. Laws, ch. 266, §§ 16, 18 (2000); see *Shepard*, 544 U.S. at 31 (O'Connor, J., dissenting).

[50] 544 U.S. at 17.

[51] *Id.* (emphasis added).

[52] *Id.* at 25-26 (emphasis added).

[53] 136 S. Ct. at 2249.

[54] 570 U.S. at 257.

[55] 280 F.3d at 317.

15

one provision of the Controlled Substances Act, 21 U.S.C. § 802, as "the appropriate federal analog[]" because it did not "define[] substantive federal drug offenses," but only the terms used elsewhere in the Controlled Substances Act.[56] Instead, we concluded that 21 U.S.C. § 844(a) was "the pertinent federal analog,"[57] because it proscribed the same conduct.

The Government argues, however, that *Gerbier* actually "embraced the idea of multiple potential federal analogues."[58] That argument is misplaced. The language used by the *Gerbier* court expressly rejected § 802 as an "appropriate federal analog[]" and instead concluded that "the pertinent federal analog" was 21 U.S.C. § 844.[59] As with the language employed by the Supreme Court, longstanding practice in this Court has steadfastly presupposed that prior convictions will have only a single, uniform federal analog.[60] The Government's position would upend that practice.

---

[56] *Id.* at 316 (citing 21 U.S.C. §§ 802(13), (44)).

[57] *Id.*

[58] Respondent Br. at 16.

[59] *Gerbier*, 280 F.3d at 316.

[60] *See Singh*, 839 F.3d at 285 ("This is *the* appropriate generic federal offense analog for convictions for 'knowingly possessing with intent to deliver a counterfeit controlled substance' . . . ." (emphasis added)); *Wilson v. Ashcroft*, 350 F.3d 377, 381 (3d Cir. 2003) ("The analogous federal criminal provision is 21 U.S.C. § 841(a)(1), which proscribes the identical conduct.").

### 2. *Congressional Intent*

Application of the categorical approach is ultimately dictated by Congress's intent in passing the relevant statute.[61] "[T]he Supreme Court has always rooted the categorical approach in the statutory language chosen by Congress and consistently defended this approach as a means of effectuating congressional intent."[62] Consequently, the "categorical approach is dictated by the text of the statute and Congress's intent to impose increased penalties based on the violation of certain predicate statutes."[63]

---

[61] *See Mathis*, 136 S. Ct. at 2252 ("Our decisions have given three basic reasons for adhering to an elements-only inquiry. First, ACCA's text favors that approach."); *Nijhawan*, 557 U.S. at 34 ("In *Taylor* and *James* we held that ACCA's language read naturally uses the word 'felony' to refer to a generic crime as generally committed."); *Taylor*, 495 U.S. at 588-89 ("[T]he 1984 definition of burglary shows that Congress, at least at that time, had in mind a modern 'generic' view of burglary. . . .").

[62] *United States v. Simms*, 914 F.3d 229, 240 (4th Cir. 2019) (en banc); *accord Singh*, 383 F.3d at 164 (concluding that the statutory text and legislative history of the Immigration and Nationality Act "support[] the conclusion that Congress intended *Taylor*'s formal categorical approach to be applied" to "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A)).

[63] *Ovalles v. United States*, 905 F.3d 1231, 1299 (11th Cir. 2018) (en banc) (Pryor, J., dissenting)

Here, an "aggravated felony" is defined under the Immigration and Nationality Act[64] in part as encompassing "any felony punishable under the Controlled Substances Act."[65] That definition incorporates the entirety of the substantive felony offenses under the Controlled Substances Act[66] as aggravated felonies under the Immigration and Nationality Act. Notably, Congress did not limit the list of potential federal analogs to lesser included offenses[67] such as simple possession,[68] possession with intent to distribute,[69] or distribution.[70] Where Congress has decided to incorporate a

---

[64] 8 U.S.C. § 1101(a)(43)(B).

[65] 18 U.S.C. § 924(c), *incorporated in* 8 U.S.C. § 1101(a)(43)(B).

[66] *Gerbier*, 280 F.3d at 315-16.

[67] Offense, Black's Law Dictionary (11th ed. 2019) (defining "lesser included offense" as a "crime that is composed of some, but not all, of the elements of a more serious crime and that is necessarily committed in carrying out the greater crime").

[68] 21 U.S.C. § 844(a). Simple possession qualifies as a felony under the Controlled Substances Act when the prosecution charges and proves the existence of a prior conviction for possession. *Carachuri-Rosendo*, 560 U.S. at 568. As a sentencing factor, however, that proof may be by a preponderance of the evidence and may be found by a judge, rather than by a jury. *Id.* at 567 n.3.

[69] 21 U.S.C. § 841(a)(1). We have previously concluded that the Federal Distribution Statute, *id.*, is a lesser included offense of the Federal School Statute, *id.* § 860. *United States v. Petersen*, 622 F.3d 196, 204 (3d Cir. 2010).

[70] 21 U.S.C. § 841(a)(1).

range of substantive offenses as generic federal analogs under the categorical approach, we must give that decision full effect.

The Supreme Court has instructed that Congress intended for the categorical approach to take full account of the actual prior conviction. In *Carachuri-Rosendo v. Holder*, the Court concluded that, of simple possession convictions, only "recidivist simple possession" qualified as a felony under the Controlled Substances Act and that a prosecutor must have charged and proven an antecedent possession conviction before a judge in state proceedings.[71] In reaching that conclusion, the Court emphasized that the text of the Immigration and Nationality Act requires a noncitizen to have "been *convicted* of a[n] aggravated felony."[72] According to the Court, that "text thus indicates that we are to look to the conviction itself as our starting place, not to what might have or could have been charged."[73]

Although *Carachuri* addressed offenses that had been charged as misdemeanors, that same principle applies here: Rosa was charged with and convicted of a greater offense— sale of a controlled substance within a school zone[74]—with the additional school zone element not included in the lesser offense. The Government cannot now avoid the implications of Rosa's actual conviction.

---

[71] 560 U.S. at 568-69.

[72] *Id.* at 576 (emphasis and alteration in original).

[73] *Id.* at 576, 578.

[74] *See State v. Ivory*, 592 A.2d 205, 210 (N.J. 1991) ("The first step in determining whether N.J.S.A. 2C:35-7 has been violated is to see whether N.J.S.A. 2C:35-5a has been violated.").

In response, the Government raises two contentions, neither of which is availing. First, it argues that the term "illicit trafficking in a controlled substance" under "the text of § 1101(a)(43)(B)" is the relevant generic analog, which is satisfied by any felony under the Controlled Substances Act.[75] That argument has some support in decisions by the Supreme Court and this Court. For example, in *Moncrieffe v. Holder*, the Supreme Court analyzed its earlier decision in *Carachuri-Rosendo* as concluding that "'illicit trafficking in a controlled substance' is a 'generic crim[e]' to which the categorical approach applies."[76] Similarly, in *Singh v. Attorney General*, we stated, "The relevant federal 'corresponding aggravated felony' here is 'illicit trafficking in a controlled substance . . . including a drug trafficking crime . . . .'"[77] That language seems to support the argument that the proper federal analog is merely the provisions of § 1101(a)(43)(B).

However, neither of those decisions rested on that cursory analysis. The *Moncrieffe* Court recognized that the proper federal analog in *Carachuri-Rosendo* was not merely "illicit trafficking." Instead, it determined that "the generic federal offense" in *Carachuri-Rosendo* was ultimately the underlying provision of the Controlled Substance Act,

---

[75] Respondent Br. at 17.

[76] 569 U.S. at 202 (alteration in original) (quoting *Nijhawan*, 557 U.S. at 37) (citing *Carachuri-Rosendo*, 560 U.S. at 576-78 n. 11).

[77] 839 F.3d at 285.

"recidivist simple possession."[78]   Similarly, in *Singh*, we concluded that "the appropriate generic federal offense analog" was not just "illicit trafficking," but the underlying provision of the Controlled Substances Act proscribing "knowingly . . . posses[sing] with intent to distribute or dispense, a counterfeit substance."[79]   In each of those cases, the court followed Congress's intent in comparing the actual state convictions to their most similar federal analog in the Controlled Substances Act.

Second, the Government contends that the term "any" in the definition of a "drug trafficking crime" [80] is ambiguous and the interpretation of the Board of Immigration Appeals is entitled to deference under *Chevron, Inc. v. Natural Resource Defense Council*.[81]   In the alternative, the Government contends that, even in the absence of deference under *Chevron*, the term still authorizes it to choose among federal analogs. Neither of those contentions has merit.  We have previously held that the Board is not entitled to deference under *Chevron* when interpreting § 924(c), because "the interpretation and exposition of criminal law is a task outside the BIA's sphere of special competence."[82]  "[T]he specified section at issue in this case is part of the federal criminal code that is incorporated by

---

[78] 569 U.S. at 195-96 (quoting *Carachuri-Rosendo*, 560 U.S. at 567).

[79] 839 F.3d at 285 (omission and alteration in original) (quoting 21 U.S.C. §§ 841(a)(2)).

[80] 18 U.S.C. § 924(c), *incorporated in* 8 U.S.C. 1101(a)(43)(B).

[81] 467 U.S. 837 (1984).

[82] *Singh*, 383 F.3d at 151.

reference into the INA. As such, the BIA's expertise in interpreting the INA is not implicated in a meaningful way and we need not defer to it."[83] Likewise, the term "any" cannot carry the authorization the Government imparts to it in this context. Although the term is undoubtedly broad, in this context, we cannot infer that Congress intended, with that one word, for lesser included offenses to effectively serve as the sole federal analogs for "any felony punishable under the Controlled Substances Act."[84]

Thus, we conclude that Congress intended for prior convictions to be compared to their most similar federal analogs.

### 3.    Determining the "Most Similar" Federal Analog

With the above principles in mind, we turn to identifying the proper federal analog for Rosa's conviction. As noted above, our analysis is guided by longstanding practice in this Court and the Supreme Court, and that practice has developed in order to effect congressional intent. We have reasoned that Congress would not have incorporated the entirety of substantive felony offenses under the Controlled Substances Act as federal analogs if it also intended to permit prosecutors and immigration officials to resort to the federal analogs with the least number of elements. Therefore, we

---

[83] *Gerbier*, 280 F.3d at 302 n.2; *accord Salmoran v. Att'y Gen.*, 909 F.3d 73, 77 (3d Cir. 2018) (citing *Singh v. Att'y Gen.*, 677 F.3d 503, 508 (3d Cir. 2012)).
[84] 18 U.S.C. § 924(c)(2).

22

conclude that, when selecting a generic federal analog, courts must, when possible, select an analog that has elements that may be "line[d] up"[85] with each of the elements of the prior conviction.

The application of those principles in this case is straightforward. Rosa's statute of conviction, the New Jersey School Zone Statute,[86] has three elements that may be described as: (1) "distributing, dispensing or possessing with intent to distribute" (2) "a controlled dangerous substance" (3) "while on any school property."[87] The Federal Distribution Statute, however, lacks that critical third element, requiring only that a person (1) knowingly or intentionally "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense" (2) "a controlled substance."[88] Because it lacks what may be described as a location element, the Federal Distribution Statute is not a proper analog to the New Jersey School Zone Statute. Instead, the Federal School Zone Statute supplies that missing element[89] and is the proper federal

---

[85] *Mathis*, 136 S. Ct. at 2248.

[86] N.J. Rev. Stat. § 2C:35-7(a).

[87] *See State v. Gregory*, 106 A.3d 1207, 1210 (N.J. 2015) ("The elements of [possession with the intent to distribute under § 2C:35-7(a)] were (1) possession of a controlled dangerous substance, (2) with the purposeful or knowing intent to distribute the substance, and (3) within 1000 feet of any school property.").

[88] 21 U.S.C § 841(a).

[89] *Petersen*, 622 F.3d at 204 ("Section 860 is therefore a substantive offense that requires proof of an element that is not included in § 841—proof that the distribution, possession or

23

analog.[90]   Consequently, the Board of Immigration Appeals erred in concluding that it could select a generic federal analog from any provision of the Controlled Substances Act and in comparing Rosa's statute of conviction to the general Federal Distribution Statute.

**B.     The Record Is Insufficient to Determine Whether the New Jersey School Zone Statute Is Divisible**

Having determined that the Federal School Zone Statute is the proper generic analog for Rosa's conviction under the New Jersey School Zone Statute, we now "compare that crime, as the categorical approach commands, with the relevant generic offense."[91]   As noted above, the New Jersey School Zone Statute provides:

> Any person who violates subsection a. of N.J.S.2C:35-5 by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog while on any school property used for school purposes which is owned by or leased to any elementary or secondary school or school board, or within 1,000 feet of such school property or a

---

manufacturing occurred within 1000 feet of a schoolyard."); *United States v. McQuilkin*, 78 F.3d 105, 108-09 (3d Cir. 1996) ("Although § 860 refers to § 841 . . . it requires a separate and distinct element—distribution within 1,000 feet of a school.").
[90] We leave open for another day the proper procedure if no federal analog fulfills the conditions we describe here or if two or more do.
[91] *Mathis*, 136 S. Ct. at 2249.

school bus, or while on any school bus, is guilty of a crime of the third degree and shall, except as provided in N.J.S.2C:35-12, be sentenced by the court to a term of imprisonment.[92]

The conduct and location elements of that statute, however, are disjunctive, and before applying the categorical approach, our "first task" is to determine whether it is divisible or indivisible—that is, whether it lists alternative elements and thereby defines separate crimes or merely lists alternative means to commit a single crime.[93]

The "threshold inquiry" of "elements or means,"[94] can be quickly resolved if the statute is clear on its face or there are prior state court decisions definitively answering the question.

---

[92] N.J. Rev. Stat. § 2C:35-7.

[93] *See Mathis*, 136 S. Ct. at 2256. Rosa directs our analysis toward the conduct element, "distributing, dispensing or possessing with intent to distribute," contending that it extends beyond the conduct covered by the Federal School Statute. The Government has not responded to Rosa's contentions regarding the conduct element of the New Jersey School Statute, presumably because we already concluded in a non-precedential opinion that a conviction under the New Jersey School Statute could not constitute an aggravated felony under the categorical approach. *Chang-Cruz v. Att'y Gen.*, 659 F. App'x 114, 119 (3d Cir. 2016). Because *Chang-Cruz* is non-precedential, however, it does not bind this panel and, pursuant to longstanding practice in this Court, we will not otherwise cite to or rely on it. *See* Third Cir. Internal Operating P. 5.7.

[94] *Mathis*, 136 S. Ct. at 2249, 2256.

[95] However, where the statute itself and state law fail to provide clear answers, courts may look "to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy)."[96] If those documents "reiterat[e] all the terms of" the statute of conviction or "use a single umbrella term" to cover all those terms, the statute is likely indivisible, listing only means to commit a single crime.[97] Conversely, if the documents "referenc[e] one alternative term to the exclusion of all others," the statute is likely divisible, listing different elements, "each one of which goes toward a separate crime."[98] Only if the statute lists different elements may we use those same documents under the modified categorical approach to determine which elements were relied on in the prior conviction.[99] If the statue is indivisible, however, we proceed directly to a comparison of the statutes' elements under the categorical approach. However, if the documents listed above do not "speak plainly," the record will not be able to satisfy the "demand for certainty" required "when determining whether a defendant was convicted of a generic offense."[100]

---

[95] *Id.* at 2256-57.

[96] *Id.* at 2249.

[97] *Id.* at 2257

[98] *Id.*

[99] *Id.* at 2257 (stating that, after asking whether the listed items are elements of the offense, "Only [then] if the answer is yes can the court make further use of the materials, as previously described, see *supra*, at 2253-2254."); *id.* at 2253 (describing use of the same materials in the modified categorical approach).

[100] *Id.* at 2257 (quoting *Shepard*, 544 U. S. at 21).

In this case, the text of the New Jersey School Zone Statute and New Jersey case law do not definitively determine whether the disjunctively phrased conduct and location elements of that statute are divisible or indivisible.[101] Therefore, the Court may look to a limited class of underlying documents to determine divisibility. However, the record before us in this case is one that does not "speak plainly." In particular, we find that the record is too limited to permit us to determine if the various items listed in the New Jersey School Zone Statute are means or elements or, if necessary, to determine which of those elements played a role in Rosa's conviction. In our review of the record, we were unable to locate Rosa's plea agreement or plea colloquy or a charging document for his possession charge. Although we do have the judgments of conviction for Rosa's convictions for both

---

[101] Although some case law suggests that New Jersey courts treat the New Jersey School Zone Statute's conduct element listing distributing, dispensing or possessing as alternate means of fulfilling a single element, the Court is not aware of any New Jersey case definitively resolving the issue. *See, e.g., State v. Maldonado*, 137 N.J. 536, 645 A.2d 1165, 1185 (1994) (upholding, on other grounds, a jury charge stating that, "to find against [the defendant] on this element, the State must prove 'he knew that it was cocaine and intended to distribute or dispense it to [another]' " (emphasis added)); *State v. Wilkinson*, 126 N.J. Super. 553, 316 A.2d 6, 8 (1973) (concluding that there was sufficient evidence to prove that the defendant was guilty of "possession of marijuana with intent to distribute or dispense it").

possession and "sale" of controlled substances,[102] we have previously held that "we may not look to factual assertions in the judgment of sentence."[103] Furthermore, the jury instructions available for the New Jersey School Zone Statute fail to clarify whether the conduct at issue consists of elements or means. There is only one set of jury instructions for distributing or dispensing on school property, which suggests that distributing and dispensing are interchangeable means. However, there is a separate set of instructions for possession with the intent to distribute on school property, which may indicate that the conduct consists of different elements that the jury must find beyond a reasonable doubt. The jury instructions, absent support from the other *Shepard* documents from Rosa's criminal case, are inconclusive. Thus, we remand to the Board for further proceedings to supplement the record; if the record cannot be supplemented to satisfy the "demand for certainty" in analyzing whether the statute lists means or elements, Rosa cannot be found to have committed an aggravated felony.[104]

---

[102] AR 564-68.

[103] *Evanson*, 550 F.3d at 293; *accord Shepard*, 544 U.S. at 26 (limiting application of the categorical approach following a guilty plea "to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information").

[104] *See Evanson*, 550 F.3d at 293-94.

**IV.    Conclusion**

For the foregoing reasons, the petition for review will be granted and the order of removal will be vacated and remanded for further proceedings.