**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2167
_____

MARVIN OLIVER GRAHAM,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A037-749-079)
Immigration Judge:  Jason L. Pope
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 16, 2022

Before: GREENAWAY, JR., PORTER and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed May 18, 2022)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Marvin Graham, a citizen of Jamaica, petitions pro se for review of a decision by the Board of Immigration Appeals ("BIA") dismissing his appeal from a decision by an immigration judge ("IJ"). The IJ ordered Graham's removal to Jamaica after denying Graham's applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny Graham's petition.

## I.

Graham was admitted to the United States as a lawful permanent resident in 1982. In 2005, a New Jersey state court sentenced him to 364 days in prison and three years of probation following his conviction for possessing a controlled dangerous substance (cocaine) with intent to distribute it within 1000 feet of a school in violation of N.J. Stat. Ann. § 2C:35-7. Based on that conviction, the Department of Homeland Security ("DHS"), in 2017, charged Graham with being removable for having been convicted of an aggravated felony, see 8 U.S.C. § 1227(a)(2)(A)(iii); see also 8 U.S.C. § 1101(a)(43)(B) (defining "aggravated felony" to include "illicit trafficking in a controlled substance (as defined in [21 U.S.C. § 802])"), and an offense relating to a controlled substance, see 8 U.S.C. § 1227(a)(2)(B)(i).

A few months after those removal charges were filed, a New Jersey state court convicted Graham of receiving stolen property in violation of N.J. Stat. Ann. § 2C:20-7, and that court sentenced him to three years in prison. In light of that new conviction,

2

DHS later brought additional charges against Graham, charging him with being removable for having been convicted of another aggravated felony, see 8 U.S.C. § 1101(a)(43)(G) (defining "aggravated felony" to include "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year" (footnote omitted)), as well as two or more crimes involving moral turpitude, see 8 U.S.C. § 1227(a)(2)(A)(ii).

In 2020, Graham, through counsel, conceded the aggravated-felony charge related to his receiving-stolen-property conviction. As for the remaining charges, the IJ sustained the moral-turpitude charge, but not the controlled-substance charge or the aggravated-felony charge related to Graham's drug crime.[1] The IJ then held a hearing on the merits of Graham's applications for relief from removal.

In support of those applications, Graham claimed that he feared returning to Jamaica because he is gay. When asked at the hearing who specifically would harm him in Jamaica, Graham responded "anyone," because "in Jamaica no one likes [people who are gay]." (A.R. at 270.) Graham also testified that he feared being harmed by a man named Prince Henry, who, according to Graham, "was like some gang member or something like that." (Id. at 264.) Henry had once lived in the same neighborhood in Paterson, New Jersey, as Graham, but Henry had since been removed to Jamaica. When

---

[1] In 2017, another IJ sustained both the controlled-substance charge and the aggravated-felony charge related to Graham's drug crime. But after Graham's immigration case was reassigned, the current IJ reconsidered that ruling in light of our intervening decision in Rosa v. Attorney General, 950 F.3d 67 (3d Cir. 2020).

Henry was living in Paterson, he "would tell people to . . . try and beat [Graham] up." (Id.)[2] Henry also made fun of Graham's relationship with a (now ex-) boyfriend named Jose. Graham has not seen Henry since 2012 or 2013; however, in both 2017 and 2020, Henry posted, on Jose's Facebook page, that he (Henry) was "going to get [Graham]" and "[s]tuff like that." (Id. at 268.)[3]

At the end of the merits hearing, the IJ issued an oral decision denying Graham's applications and ordering his removal to Jamaica. The IJ determined that Graham's drug conviction qualified as a "particularly serious crime," thereby rendering Graham ineligible for asylum and withholding of removal.[4] As for Graham's claim for deferral of removal under the CAT, the IJ denied that claim on the merits for two reasons. First, the IJ stated that Graham "has failed to demonstrate [that] it is more likely than not that he would be subjected to torture if he were to return to Jamaica." (Id. at 102.) Second, the IJ stated that Graham "has failed to demonstrate that the [Jamaican] government would consent or acquiesce to his torture." (Id. at 103.)

---

[2] Graham did not identify any instances in which someone actually followed that directive from Henry.

[3] In 1999, Graham was attacked in Paterson by a group of people with Jamaican accents because of his sexual orientation. He suffered serious injuries to his face, which required surgery and the insertion of a metal plate and screws. But there is no indication that Henry (or anyone else now living in Jamaica) was involved in that attack.

[4] The IJ explained that Graham was also ineligible for asylum because of his removability for having been convicted of the receiving-stolen-property aggravated felony.

Thereafter, Graham filed a pro se appeal, which the BIA dismissed in June 2021. In its decision, the BIA began by stating that Graham was indeed removable pursuant to the aggravated-felony charge related to his receiving-stolen-property conviction.[5] Next, the BIA agreed with the IJ that Graham's drug offense qualified as a particularly serious crime, thereby rendering him ineligible for asylum and withholding of removal. As for Graham's claim for deferral of removal under the CAT, the BIA agreed with the IJ that Graham had failed to show that it was more likely than not that he would be tortured in Jamaica. Lastly, the BIA rejected Graham's argument that the IJ and DHS were biased against him, as well as Graham's claims that his attorney had been ineffective. Graham then timely filed the petition for review that is now before us.

## II.

We have jurisdiction over Graham's petition pursuant to 8 U.S.C. § 1252(a)(1). "We review legal questions and the application of law to fact *de novo* with appropriate deference to the BIA's reasonable interpretation of the [Immigration and Nationality Act]." Luziga v. Att'y Gen., 937 F.3d 244, 251 (3d Cir. 2019); see Denis v. Att'y Gen., 633 F.3d 201, 205-06 (3d Cir. 2011) (indicating that aggravated-felony determinations and particularly-serious-crime determinations are questions of law). Meanwhile, we review factual challenges to the agency's denial of Graham's CAT claim under the substantial-evidence standard. See Nasrallah v. Barr, 140 S. Ct. 1683, 1692 (2020).

[5] Because the BIA determined that Graham was removable on that ground, the BIA did not address his arguments regarding the other charges of removability.

5

Under that "highly deferential" standard, "[t]he agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. (quoting 8 U.S.C. § 1252(b)(4)(B)).

### III.

We begin our review with the agency's determination that Graham's receiving-stolen-property conviction under N.J. Stat. Ann. § 2C:20-7 qualifies as an aggravated felony. To the extent that he challenges that determination in his briefing, that challenge fails. Graham, through his former counsel, already conceded that this conviction indeed qualifies as an aggravated felony, and Graham's attempt to take a different position now lacks merit in any event. See Lewin v. Att'y Gen., 885 F.3d 165, 167-70 (3d Cir. 2018) (applying the categorical approach and concluding that the petitioner's receiving-stolen-property conviction under section 2C:20-7 qualifies as an aggravated felony).[6]

Next, we consider the agency's determination that Graham's conviction for possessing a controlled dangerous substance with intent to distribute it within 1000 feet of a school in violation of N.J. Stat. Ann. § 2C:35-7 constitutes a particularly serious crime. A non-citizen who has been convicted of a particularly serious crime is ineligible for asylum and withholding of removal. See 8 U.S.C. § 1158(b)(2)(A)(ii); 8 U.S.C. § 1231(b)(3)(B)(ii). The phrase "particularly serious crime" encompasses more than just

---

[6] Because we agree with the agency's determination that Graham is removable for having been convicted of an aggravated felony, we need not decide whether he is removable for having been convicted of two crimes involving moral turpitude.

aggravated felonies. Sunuwar v. Att'y Gen., 989 F.3d 239, 248 (3d Cir. 2021). "While some offenses are per se particularly serious, the Attorney General [also] retains the authority, through a case-by-case evaluation of the facts surrounding an individual [non-citizen's] specific offense, to deem that [non-citizen] to have committed a particularly serious crime." Id. at 248-49 (first alteration in original) (internal quotation marks omitted); see id. at 250 (explaining that the agency "has broad discretion to decide whether an offense is a particularly serious crime" (internal quotation marks omitted)). When "conducting its analysis, the agency first decides whether an offense's elements potentially bring the crime into a category of particularly serious crimes." Id. at 249 (internal quotation marks omitted). If the agency answers that question in the affirmative, "the agency then determines whether the offense is particularly serious by considering all reliable information about the facts and circumstances of the offense, including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction." Id. (internal quotation marks omitted).

In this case, the IJ appropriately applied this two-part test in evaluating whether Graham's drug conviction qualifies as a particularly serious crime. At the first step, the IJ determined "that the elements of the offense potentially bring the crime into a category of particularly serious crimes because the statute [of conviction] was created to protect children within the proximity of public property from the inherent dangers and nature of drug trafficking." (A.R. at 100.) At the second step, the IJ determined that Graham's conviction qualified as a particularly serious crime, noting that the record showed that he

7

was in possession of cocaine near a high school, and that an aggravating factor at his sentencing was "the substantial likelihood that [he] is involved in organized criminal activity." (Id. at 101 (internal quotation marks omitted).) The BIA discerned no error in the IJ's decision, and we see no reason to reach a different conclusion here.

Because Graham's drug conviction qualifies as a particularly serious crime, he is eligible only for deferral of removal under the CAT. See Sunuwar, 989 F.3d at 250. To obtain CAT relief, the applicant must show that it is more likely than not that (1) he would be tortured if removed to the country in question, and (2) "such torture would be inflicted by or at the instigation of or with the consent or acquiescence of a public official." Flores v. Att'y Gen., 856 F.3d 280, 296 (3d Cir. 2017) (internal quotation marks omitted). To determine whether an applicant meets the first part of this standard, "the IJ must ask (1) what is likely to happen to the [applicant] if removed and (2) whether what is likely to happen amounts to torture." Guzman Orellana v. Att'y Gen., 956 F.3d 171, 181 (3d Cir. 2020). The first of those two inquiries is factual, while the second is legal. Id.

In this case, the IJ found that "it is speculative at best that [Graham] would suffer any harm by Prince Henry or any other individuals if he were to return to Jamaica." (A.R. at 102.) The IJ highlighted the fact that Graham had not seen Prince Henry in seven or eight years, and the IJ found that Prince Henry's social media posts threatening to "get" Graham were "too speculative and attenuated in order for the [IJ] to determine it is more likely than not that Prince Henry would seek to torture [Graham]." (Id.) The IJ

8

also found that the fact that Graham is "a gay man . . . looking to be sexually active when he returns [to Jamaica]" was not enough to demonstrate that it is more likely than not that someone in that country would torture him.  (Id.)  The IJ noted that, although "there is a law in Jamaica criminalizing consensual same sex activity between men," the U.S. State Department's country-conditions report for Jamaica indicated that the Jamaican government was enforcing that law "only . . . in cases of sexual assault and child molestation."  (Id. at 102-03.)  Additionally, although the IJ recognized that "there are issues involving discrimination [against] those who are members of the LGBT community in Jamaica," the IJ explained that this discrimination did not mean that it is more likely than not that Graham would be *tortured* there.  On appeal, the BIA, "[c]onsidering the possibility of torture cumulatively," agreed with the IJ that Graham "has not met his burden of proof to establish it is more likely than not that he will be tortured if returned to Jamaica."  (Id. at 4.)

Having carefully considered Graham's arguments, we see no reason to disturb the agency's denial of his CAT application.  Graham has not demonstrated that the administrative record in this case *compels* the conclusion that it is more likely than not that Prince Henry or someone else in Jamaica would harm Graham in a way that might rise to the level of torture.[7]  To the extent that Graham purports to rely on evidence

---

[7] To the extent that Graham points to the mistreatment that he has received on account of his sexual orientation while living in the United States — the most notable is the attack that he suffered over 20 years ago in New Jersey at the hands of individuals with

outside of the record, that evidence is not properly before us.  <u>See</u> 8 U.S.C.

§ 1252(b)(4)(A).

    We have considered all of Graham's arguments, and we find none of them

persuasive.  Accordingly, and in view of the above, we will deny his petition for review.

---

Jamaican accents — we are not persuaded that this evidence compels the conclusion that
it is more likely than not that he would be tortured in Jamaica.